ST. LOUIS–SAN FRANCISCO RAIL-WAY COMPANY, a corporation, Plaintiff,

v.

MISSOURI–KANSAS–TEXAS RAIL-ROAD COMPANY, a corporation, Defendant.

No. 62 C 1(1).

United States District Court
E. D. Missouri, E. D.

Nov. 28, 1962.

Ernest D. Grinnell, Jr., and W. W. Dalton, St. Louis, Mo., for plaintiff.

F. W. Schwarz, St. Louis, Mo., for defendant.

HARPER, District Judge.

The plaintiff, St. Louis-San Francisco Railway Company, a corporation (hereinafter referred to as Frisco), is a Missouri corporation, with its principal place of business in Missouri. The defendant, Missouri-Kansas-Texas Railroad Company, a corporation (hereinafter referred to as Katy), is a Delaware corporation, whose principal place of business is in Texas. The amount in controversy, exclusive of interest and costs, exceeds $10,000.00, giving this court jurisdiction under Title 28 U.S. C.A. § 1332.

The suit is based on a contract dated July 22, 1911, between the plaintiff's predecessor companies, the defendant's predecessor companies, and the Missouri Pacific Railway Company, covering the establishment, use and maintenance of an interlocking plant near Paola, Kansas. The testimony discloses that on September 20, 1962, a train operated by Katy derailed and damaged the interlocking plant at Paola, Kansas, referred to in the contract. The contract between the parties provided that Frisco was to repair the damage, but the cost was to be borne by Katy since its equipment had caused the damage. A Frisco signal crew was directed to proceed to Paola to make the necessary repairs. The signal crew used a track motor car which was equipped with track torpedoes. The motor car remained at the site and nearby was a flat car on top of which was another track motor car, which was also equipped with track torpedoes.

On September 25, 1955, Roy Lee Stark, accompanied by Harold Eugene Weaver, both children, removed some track torpedoes from one or both of the track motor cars. The torpedoes were taken from the site by the children to the home of Stark. While playing with the track torpedoes one exploded and Stark's eye was injured. Suits were filed against the Frisco by Stark and his mother. The suits were settled by Frisco for $12,500.00, plus $574.73 court costs. The Frisco also incurred attorneys' fees in the amount of $1,500.00. The reasonableness of these amounts is conceded. Frisco in this suit seeks to be reimbursed by Katy for the amounts expended as a result of the Stark suits.

Frisco duly notified Katy of the suits brought against it. Both parties concede that the rights of the parties are governed by the aforementioned contract of 1911. The principal fact in dispute arises out of the question as to whether the track torpedoes were removed by the boys from the track motor car used by the Frisco repair crew or from the track motor car on the flatcar located nearby, or from both. The depositions of the Stark and Weaver boys were introduced in evidence and both boys testified that the torpedoes were obtained from the track motor car located on the track, being the track motor car used by the crew sent to repair the damages to the interlocking plant. The defendant sought to impeach this testimony with an unsigned statement of the Weaver boy taken shortly after the accident, which indicated that the torpedoes were taken from both track motor cars. The statement was taken by an agent of Frisco shortly after the occurrence. Frisco objected to the introduction of the Weaver boy's unsigned statement, and while it is very questionable as to whether or not it is proper testimony, the court is taking it into consideration in determining whether the two boys obtained the torpedoes.

Taking the statement and the testimony as a whole, the court finds that the torpedoes were removed only from the track motor car used by the crew sent by Frisco to repair the interlocking plant. The 1911 contract is quite lengthy, but the decision in this matter turns on the construction of Section 14 of the contract. Section 14 of the contract in its entirety is attached as Appendix 1 to this opinion and made a part thereof. None of the paragraphs of Section 14 are numbered, but for the purposes of this opinion the various paragraphs have been lettered A through M, inclusive, by the court, and the lettered paragraphs hereinafter referred to are the paragraph letters placed opposite the paragraphs of Section 14 of the contract. A portion of Paragraph A has been underlined by the court, and in addition, that part in parenthesis following Paragraph L has been added by the court.

The damage caused by Katy to the interlocking plant clearly falls within Paragraph D of the contract and Katy admitted as much by reimbursing Frisco for such damages. Frisco urges that the injury to the Stark boy and the settlement of the damage suits brought as a result of such injury also falls within this paragraph. The court, however, does not adopt this position. It is true that the derailment of the Katy train causing the damage to the interlocking plant set in motion a series of events which ultimately resulted in the injury, but such injury is so remote that the parties to the contract of 1911 could not have contemplated this situation when they agreed to this paragraph in the contract. A more reasonable interpretation of the contract leads one to the conclusion that Paragraph I applies. Under the contract Frisco had an absolute duty to repair the interlocking plant, although destroyed by Katy. Paragraph I provides that maintenance damages include damages arising from "construction, reconstruction, renewal, maintenance or repair of said interlocking plant." The repairs in the present case clearly fall within this definition of maintenance damages.

Paragraphs J and K provide that "the rules for the assumption and division

of damages set forth in this section shall apply in like or analogous manner to maintenance damages." Thus, Paragraph D is incorporated by reference except that "maintenance" should be substituted for the word "used". Incorporating this change the provision with respect to maintenance damages would read as follows: "If at the time either crossing, or the portion of the interlocking plant pertaining to it, or the portion of the tracks within the limits of the portion of the interlocking plant pertaining to it, is being 'maintained' by the engines, cars or trains of only one party hereto, such party shall bear all damages."

Under this construction Frisco would be solely liable for the injuries sustained by the Stark boy and the recovery as a result thereof, since only its employees and its cars were involved in the "maintenance" of the interlocking plant at the time. This is the only reasonable construction of the contract, as otherwise Frisco would be able to escape the consequence of its own negligence. Other paragraphs of Section 14 not specifically referred to herein fix liability where negligence is involved on the negligent party, and to hold otherwise with respect to the damages involved herein would be inconsistent with those provisions.

Frisco further contends that if it is not entitled to recover the entire amount involved that Paragraph L imposes an absolute liability on Katy as to one-third of the damages. Paragraph L only applies where other provisions do not apply and since the court has held that Paragraph I is applicable, Paragraph L does not apply.

The court accordingly holds that Frisco is not entitled to any relief under the contract and that judgment will be for the defendant Katy.

The court will adopt this memorandum opinion as its findings of fact and conclusions of law and the clerk will prepare a judgment consistent with this opinion and submit same to the court for entry.

## APPENDIX 1 TO MEMORANDUM OPINION
### SECTION 14

(A) The provisions of this Section shall apply separately, on the one hand, to one of said crossings, and the portion of the interlocking plant pertaining to it, and the portion of the tracks within the limits of the portion of the interlocking plant pertaining to it, and on the other hand, to the other of said crossings and the portion of the interlocking plant pertaining to it, and the portion of the tracks within the limits of the portion of the interlocking plant pertaining to it, *in all cases of injury to or death of person, or injury, loss or destruction of property which may occur* in the use of either of said two crossings or the portion of the interlocking plant pertaining to it, or the portion of the tracks within the limits of the portion of the interlocking plant pertaining to it.

(B) All damages, costs and expenses from injury to or death of person, or injury, loss or destruction of property, which may occur in the use of either of said two crossings, or the portion of the interlocking plant pertaining to it, or the portion of the tracks within the limits of the portion of the interlocking plant pertaining to it, are referred to for convenience as "damages".

(C) The responsibility for such damages is hereby assumed and divided as follows:

(D) If at the time either crossing, or the portion of the interlocking plant pertaining to it, or the portion of the tracks within the limits of the portion of the interlocking plant pertaining to it, is being used by the engines, cars or trains of only one party hereto, such party shall bear all such damages.

(E) If the engines, cars or trains of two parties hereto shall collide at either of said two crossings, or upon the said portion of the tracks pertaining to it, and if the sole employees of one party by their negligence or wrongful act or omission shall cause such collision, or if such collision shall be caused by the neg-

ligence or wrongful act or omission of the sole employees of one party, and of said joint employees, such party whose sole employees are so at fault, shall bear all the damages resulting from the collision; but if the sole employees of two parties, by their negligence or wrongful act or omission shall cause such collision, then each of said two parties shall bear all the damages resulting from such collision, to its sole employees, its passengers or persons upon its engines, cars or trains, and to its own property and to property in its possession or upon its engines, cars or trains, or in the possession of its sole employees, its passengers or persons upon its engines, cars or trains, and the remainder of such damages, resulting from such collision, caused by the said joint negligence or wrongful act or omission of the sole employees of said two parties, shall be divided and borne equally between the said two parties. If such collision shall be caused by the negligence or wrongful act or omission of said joint employees, then such damages shall be divided and assumed in the same manner as provided above in the case where the sole employees of two parties by their negligence or wrongful act or omission, have contributed to such collision.

(F) If any of such damages shall be caused in the use of either of said crossings or of the portion of the interlocking plant pertaining thereto, or of the portion of the tracks within the limits of the portion of the interlocking plant pertaining thereto, by the engines, cars or trains of one or two of the parties hereto, or by the sole employees of one or two of the parties hereto, or by said joint employees, or by said joint employees and the sole employees of one or two of the parties hereto, then except as to the assumption and division of damages hereinbefore in this Section provided, such damages shall be borne and assumed as follows:

(G) If caused by the negligence or wrongful act or omission of the sole employees of one party, either alone or in conjunction with the negligence or wrongful act or omission of said joint employees, then such party whose sole employees are so at fault, shall bear all such damages.

(H) If caused by the joint negligence or joint wrongful act or omission of the sole employees of two parties hereto, or of the sole employees of two parties hereto and of said joint employees, then each such party shall bear such damage to its sole employees, passengers and persons upon its engines, cars or trains, and to its property, and property in its possession, or upon its engines, cars or trains, or in the possession of its sole employees, passengers, or persons upon its engines, cars or trains, and the remainder of such damages caused by such joint negligence or joint wrongful act or omission of the sole employees of two parties hereto, or of the sole employees of two parties hereto, and of said joint employees, shall be borne equally by the two parties whose tracks are at the crossing in the use of which, or of the portion of the interlocking plant pertaining thereto, or the portion of the tracks within the limits of the portion of the interlocking plant pertaining thereto, such damages shall occur.

(I) All damages, costs and expenses from injury to or death of person, or injury, loss, or destruction of property, which may occur in the construction, reconstruction, renewal, maintenance or repair of said interlocking plant, are for convenience referred to as "maintenance damages."

(J) The responsibility for maintenance damages is hereby assumed and divided as follows:

(K) The rules for the assumption and division of damages hereinbefore set forth in this Section shall apply in like or analogous manner to maintenance damages.

(L) The remainder of the damages and of the maintenance damages, the assumption or division of which is not hereinbefore in this Section provided for, shall be assumed and divided as follows: If the same shall occur in the use of one of said two crossings or of

the portion of the interlocking plant pertaining to it, or of the portion of the tracks within the limits of the portion of the interlocking plant pertaining to it, such damages and maintenance damages shall be assumed and divided equally between the two parties whose tracks intersect at such crossing. But if such damages, or maintenance damages occur under other circumstances than hereinbefore stated in this paragraph, then such damages and maintenance damages shall be assumed and divided equally between the Frisco Company, the Pacific Company and the Kansas Company. (The parties in this suit are successors in interest to the mentioned companies.)

(M) Each party as to the damages which it assumes under this Section, shall indemnify and save harmless the other parties hereto.